SEXTON, Judge Pro Tem.
| iPlaintiff, Khadijah Brooks, appeals a judgment granting an involuntary dismissal and exception of no cause of action in favor of Defendant USAgencies Insurance Company (“USAgencies”) and dismissing Ms. Brooks’ claims with prejudice. For the reasons stated herein, we affirm.

FACTS

The present appeal arises out of an automobile collision and is the second time this matter has been before the court. The underlying facts were set forth in our prior opinion, wherein summary judgment *686 in favor of Ula Minnieweather, the owner of the offending vehicle, was affirmed. Brooks v. Minnieweather, 44,624 (La.App.2d Cir.8/19/09), 16 So.3d 1244. Those facts are as follows:
On September 8, 2005, a collision occurred between Ms. Brooks’ car and a 1997 Ford Expedition SUV owned by Ula Minnieweather. Ms. Brooks was traveling behind the SUV on Corky Avenue in Bastrop, Louisiana. At the intersection of Corky Avenue and Pleasant Street, the SUV allegedly stopped and began to back up, striking the front of the plaintiffs vehicle. The male driver of the vehicle fled the scene in the SUV.
On September 7, 2006, the plaintiff filed suit. Named as defendants were Ms. Minnieweather, the owner of the SUV; John Doe, the driver of the SUV; USAgencies Insurance Company, Ms. Minnieweather’s insurer; and State Farm Mutual Automobile Insurance Company, the plaintiffs UM carrier.
[[Image here]]
In her deposition, the plaintiff testified the accident occurred at about 7:00 p.m. after she picked up the children of a friend from day care. She further testified that about five minutes after the other driver fled the accident scene, a woman appeared who claimed to be the mother of the SUV owner. The woman said the driver was her daughter’s flaneé, Shawn. She asked the plaintiff to not call the police because Shawn had outstanding warrants and no driver’s license. However, the plaintiff called the police. About 10 minutes later, the owner of |2the SUV arrived at the accident scene in the SUV. She did not speak to the plaintiff but told the police that her vehicle had been stolen; she said that whoever had taken the vehicle was gone and she did not know he had taken it. The plaintiff also testified that she did not recognize the other driver and had never seen him before. However, she said that she had seen him once since the accident, walking a dog on a Bastrop street.
Ms. Minnieweather testified in her deposition that at the time of the accident she was living with her mother and that her mother had taken in two Katrina victims, an old woman and a young man called “Moo-Moo.” She denied knowing the man’s real name, and she believed that he was the old woman’s grandson. She testified that she was the only person to drive her SUV. On the day of the accident, she was asleep when a friend called to tell her that she had seen a man driving her SUV. Ms. Min-nieweather testified that after she saw that her SUV was gone, she had the friend pick her up so they could look for the SUV. While they were driving around, Ms. Minnieweather received a call from her cousin, Terry Island, that the SUV had been involved in an accident. She said that she went to the accident site and told the police officer there that her vehicle had been stolen. She then continued looking for it. Ms. Minnieweather testified that she found the vehicle abandoned near some apartments and drove it back to the accident site. According to Ms. Minnieweather, the key the male driver used to drive the SUV had been in her purse in her bedroom. Because he was the only male in the house, she assumed that Moo-Moo was the driver. She denied knowing anyone named Shawn; she also said she did not have a boyfriend at the time of the accident.
Finding no evidence of personal liability on the part of Ms. Minnieweather and noting the absence of evidence that she had entrusted her vehicle to John Doe, the unconfirmed driver, this court affirmed *687 summary judgment in favor of Ms. Min-nieweather and dismissed her from the suit. See Brooks, supra. USAgencies had also filed a motion for summary judgment, which was denied by the trial court due to factual issues regarding whether permission had been granted, either express or implied, to the then-unconfirmed driver of the offending vehicle.
| a On the eve of the hearing on the motions for summary judgment in the trial court, Ms. Brooks expressed that she had identified the unknown driver, John Doe, as one Fernando Hubbard. Counsel for Ms. Brooks presented an affidavit to the court attesting to this identification, but the affidavit was excluded as untimely by the trial judge and this decision was affirmed on appeal in Brooks, supra. Mr. Hubbard was never added to the suit as a defendant. He was, however, deposed in August 2009 at the Morehouse Parish Jail, where he was incarcerated and where he resided through trial of this matter.
The matter proceeded to a bench trial on July 10, 2010, against named Defendants USAgencies and John Doe. At trial, Ms. Brooks testified on her own behalf and presented the testimony of Mr. Hubbard and Eric Newnum, the police officer who responded to the accident. Ms. Brooks had also subpoenaed Gwendolyn Brown, Ms. Minnieweather’s mother, who arrived at the scene of the accident just minutes after it had occurred and spoke with Ms. Brooks at the scene. Ms. Brooks allegedly had difficulty locating Ms. Brown prior to trial; and, therefore, the trial judge ordered an attachment on the morning of trial for Ms. Brown.
The testimony at trial was at best inconsistent and contradictory and each witness in one respect or another was lacking credibility. Mr. Hubbard testified that he and Ms. Minnieweather were married, but physically separated at the time of the accident. According to Mr. Hubbard, he was living with his parents and she was living with her mother, Ms. Brown. Mr. Hubbard denied having ever lived with Ms. Brown and denied having |4access or permission to drive Ms. Minnieweather’s vehicles. He further denied being the driver of the SUV on the day of the accident. The story he related about how he became aware of the accident was completely different from the version he provided in his deposition testimony a year prior. Recall that Ms. Minnieweather testified in deposition that, on the day of the accident, her SUV had been stolen by a male Katrina victim who had been taken in by her mother, who she only identified as Moo-moo. Ms. Minnieweather testified that she did not even have a boyfriend at the time of the accident.
Ms. Brooks testified in her deposition that she did not recognize the driver of the SUV at the time of the accident. At trial, however, she testified that she knew him as “Shawn,” which is Mr. Hubbard’s middle name. Ms. Brooks further testified that she had gone to middle school with Mr. Hubbard. She identified him in court and testified about the 2009 affidavit wherein she said that Mr. Hubbard was the individual driving the SUV. Again, at no time prior to the completion of evidence did counsel for Ms. Brooks request to amend the petition to substitute Mr. Hubbard as a defendant.
At this point in the trial, Ms. Brown had not yet been located and counsel for USA-gencies moved for involuntary dismissal and urged an exception of no cause of action. Counsel argued the motion and the court recessed for lunch. Ms. Brown was located over the lunch recess and the trial judge allowed Ms. Brooks to re-open her case and call Ms. Brown to testify.
|fiMs. Brown provided little clarification of the case in her testimony. She testified *688 that both Ms. Minnieweather and Mr. Hubbard were living with her at the time of the accident. She denied having any Katrina evacuees residing in her home. Ms. Brown admitted that she was at the scene of the accident after the SUV fled. She denied, however, that Mr. Hubbard was allowed to drive Ms. Minnieweather’s vehicles. Finally, Ms. Brown testified that Mr. Hubbard had cleaned the SUV and that she had observed him riding as a passenger in the vehicle.
Following Ms. Brown’s testimony, the trial judge granted the previously urged motion for involuntary dismissal, as well as the exception of no cause of action. A judgment was subsequently signed dismissing the action against USAgencies with prejudice. The trial judge’s oral reasons found no affirmative evidence of permissive use for any driver that would bring that driver under the omnibus clause of the insurance policy; and the judge specifically denied the motion to amend the petition to add Mr. Hubbard as a defendant. The present appeal by Ms. Brooks ensued.

DISCUSSION

As a threshold matter, we first dispense with the argument of Ms. Brooks that the direct action statute provides a direct claim for her against USAgencies. La. R.S. 22:1269(B) provides plaintiffs with a direct claim against an insurer in certain limited circumstances:
B. (1) The injured person or his survivors or heirs mentioned in Subsection A of this Section, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury |fioccurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Code of Civil Procedure Art. 42 only; however, such action may be brought against the insurer alone only when at least one of the following applies:
(a) The insured has been adjudged bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured bankrupt have been commenced before a court of competent jurisdiction.
(b) The insured is insolvent.
(c) Service of citation or other process cannot be made on the insured.
(d) When the cause of action is for damages as a result of an offense or quasi-offense between children and their parents or between married persons.
(e) When the insurer is an uninsured motorist carrier.
(f) The insured is deceased.
Ms. Brooks argues that subsection (c) applies to her claim because she was unable to serve Ms. Minnieweather. The record, however, reflects that Ms. Min-nieweather was served and, as stated herein, was dismissed from the suit on summary judgment. None of the circumstances of the direct action statute are met herein; and, therefore, in order for Ms. Brooks’ action to proceed, a covered insured must also be named as a defendant. We now turn, therefore, to the propriety of the involuntary dismissal, Ms. Brooks’ failure to name Mr. Hubbard as a defendant and the refusal of the trial judge to allow Ms. Brooks to amend her petition to substitute Mr. Hubbard for John Doe.
| tInvoluntary Dismissal
A motion for involuntary dismissal at the close of the plaintiffs evidence is permissible after a bench trial when, based upon the facts and law, the plaintiff has *689 failed to show a right to relief. La. C.C.P. art. 1672(B). Upon a motion for involuntary dismissal, the judge must evaluate all the evidence, without any special inferences in favor of the opponent of the motion, and grant the dismissal if the plaintiff has not established proof by a preponderance of the evidence. Barnes v. Barnes, 46,417 (La.App.2d Cir.6/22/11), 71 So.3d 1004. The appellate court will not reverse an involuntary dismissal under La. C.C.P. art. 1672(B) in the absence of manifest error; and, there is no manifest error if there is a reasonable factual basis for the finding of the trial court. Atkins v. City of Shreveport, 45,665 (La.App.2d Cir.9/22/10) 48 So.3d 326. The trial court has great discretion in the granting of an involuntary dismissal. Barnes, supra, citing Chandler v. Chandler, 45,308 (La.App.2d Cir.5/19/10), 37 So.3d 569 and Smith v. Knight, 39,781 (La.App.2d Cir.6/29/05), 907 So.2d 831.
Ms. Brooks first argues that the trial judge erred in ruling on the motion for involuntary dismissal because she had not yet concluded her case when the motion was heard as Ms. Brown had not yet been located and testified. We are not persuaded by this argument. Ms. Brown was located waiting in the wrong courtroom. Ms. Brooks was allowed to re-open her case and present the testimony. The trial judge heard and evaluated Ms. Brown’s testimony in regard to the motion for involuntary dismissal. The fact that the motion was urged prior to Ms. Brown’s testifying does not | Roffend the language of article 1672(B) that the motion be made following the completion of a plaintiffs presentation of evidence. The testimony was ultimately adduced and considered by the judge prior to ruling.
The second inquiry we will address is the post-trial motion of Ms. Brooks to amend her pleadings to name Mr. Hubbard as a defendant. As previously stated, absent a qualifying circumstance under the direct action statute, a plaintiff must name a covered defendant along with the insurer. After the answer has been served, a plaintiff may amend his or her petition only by leave of court or by written consent of the adverse party. A court’s decision not to permit refiling is reviewable only for abuse of discretion. La. C.C.P. art. 1151. Bankston v. Alexandria Neurosurgical Clinic, 94-693 (La.App. 3d Cir.12/7/94), 659 So.2d 507, writ not considered, 95-0465 (La.4/7/95), 660 So.2d 436.
There is no dispute that Ms. Brooks expressed that Mr. Hubbard was the driver of the SUV as early as 2009, more than one year prior to trial in this matter. Counsel for Ms. Brooks apparently became aware of the critical necessity to amend the petition to name Mr. Hubbard as a defendant at the conclusion of Ms. Brooks’ evidence, as this was the first effort to move to amend. This oral motion to amend was denied by the trial judge.
Considering the nature of the inconsistent, incredible testimony in this case provided by all witnesses herein, the trial judge found it would be an abuse of discretion to allow the eleventh hour amendment. We review that determination under the abuse of discretion standard and find no such abuse in the judge’s refusal to allow the amendment.
| Assuming, arguendo, that the trial judge erred in disallowing the amendment to substitute Mr. Hubbard for John Doe, the unknown driver, we find no manifest error in the trial judge’s determination that there was no evidence of permissive use of the vehicle by any driver, whether it be Mr. Hubbard, Moo-moo or a phantom driver.
All motor vehicle liability insurance policies are required to include an omnibus *690 clause which extends coverage to the person named therein and to any other person using such motor vehicle with the express or implied permission of the named insured. La. R.S. 32:900(B). Once permission, either express or implied, is granted by the insured to use the vehicle, any subsequent changes in the character of the use do not require additional specific consent of the insured. Thereafter, coverage will be denied only if the deviation from permissive use amounts to theft or other conduct displaying utter disregard for the return or safekeeping of the vehicle. Brooks, supra; Wells v. Kemper Casualty Insurance Co., 35,304 (La.App.2d Cir.12/28/01), 803 So.2d 450, writ denied, 02-0271 (La.3/28/02), 812 So.2d 634.
As previously discussed, a review of the transcript of the trial herein reveals untruthful and inconsistent deposition and trial testimony of all of the witnesses. Moreover, the record is replete with instances of the trial judge asking counsel for Ms. Brooks to tell the court what affirmative evidence exists to show permissive use on the part of the driver of the SUV, whoever it may have been. Counsel was unable to provide any such evidence. A review of the testimony leaves this court with no conclusion as |1f)to who was, more likely than not, the driver of the SUV and/or whether that driver resided in Ms. Brown’s home or had permission to use the SUV. We, therefore, find no manifest error in the trial court’s granting of the involuntary dismissal.
In addition, our de novo review of the record yields the same result with respect to the granting of the exception of no cause of action. Wright v. Louisiana Power & Light, 06-1181 (La.3/9/07), 951 So.2d 1058. The claims of Ms. Brooks were properly dismissed with prejudice.

CONCLUSION

For the foregoing reasons, the judgment granting USAgencies Insurance Company’s motion for involuntary dismissal and exception of no cause of action and dismissing the claims of Plaintiff, Khadijah Brooks, is affirmed. Costs of appeal are assessed to Khadijah Brooks.
AFFIRMED.