# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SANDRA KIVELL,                                  )
individually, and as Personal                   )
Representative of the Estate of                 )
Milton J. Kivell, deceased,                     )
                                                )
                                                )      C.A. No. N15C-07-093 ASB
        Plaintiff,                              )
                                                )
        v.                                      )
                                                )
UNION CARBIDE CORP. *et al.*,                   )
                                                )
        Defendants.

Decided:  May 1, 2018

On Defendant's Motion for Summary Judgment
after reviewing additional evidence.
**GRANTED.**

## <u>ORDER</u>

This Court granted summary judgment on August 30, 2017 in favor of

Defendant Union Carbide Corporation ("UCC").  The Court granted Defendant's

motion for summary judgment based on Louisiana case law including Western

District of Louisiana's decision in *Roach v. Air Liquid America*.

On their Motion for Reargument, Plaintiff argued that UCC did not advance

any of the evidentiary issues relied on by this Court in its motion for summary

judgment, and thus waived the arguments concerning the presence of asbestos in the Taft facility.

Plaintiff's main argument on her Motion is that evidence, not available at the time of summary judgment, was discovered by Plaintiff's counsel. Plaintiff contends that the contracts, and subsequent documents produced by Kiewit contain evidence that this Court determined Plaintiff was missing on summary judgment.

In granting a motion for reargument under Superior Court Civil Rule 59(e), the only issue is whether the Court overlooked something that would have changed the outcome of the underlying decision.[1] The Court considered the documents as newly discovered evidence because it was evidence that the Court did not have and was not able to consider at the time of its decision. Plaintiff laid out his position in the initial Motion. Defendant responded to Plaintiff's argument regarding the new evidence and Plaintiff has filed a reply.

The Court may grant a motion for summary judgment made pursuant to Superior Court Civil Rule 56 where the movant can show from the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that no material issues of fact exist so that the movant is entitled judgment

---

[1] *Brenner v. Vill. Green, Inc.*, 2000 WL 972649, at *1 (Del. Super. May 23, 2000) *aff'd*, 763 A.2d 90 (Del. 2000).

as a matter of law. In considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.[2]

In Plaintiff's motion for reargument three facts are called into question upon which summary judgement was granted; that UCC exercised a degree control over its independent contractor and Mr. Kivell so as to impute vicarious liability to UCC, that the Taft facility contained asbestos sufficient to hold UCC directly liable, and that UCC can be held strictly liable based on the custody of asbestos Mr. Kivell encountered through his work at the UCC facility.

Generally a principal is not liable for acts of an independent contractor in the performance of their contractual obligations.[3] The two exceptions to this rule are 1) The independent Contractor is involved in "ultrahazardous" work, or 2) The principal is in direct control over the manner in which the independent contractor completes the work.[4]

The determination of "ultrahazardous" activity has been held by the Supreme Court of Louisiana to include activities that can cause injury to others, "even when

---

[2] Smith v. Advanced Auto Parts, Inc., 2013 WL 6920864, at *3 (Del. Super. Ct. Dec. 30, 2013);
 see Moore v. Sizemore, 405 A.2d 679, 680 (Del. 1979); Nutt v. A.C. & S., Inc., 517 A.2d 690, 692 (Del. Super. Ct. 1986); In re Asbestos Litigation (Helm), 2012 WL 3264925 (Del. Aug. 13, 2012).
[3] See Touchstone v. G.B.Q. Corp., 596 F.Supp. 805, 813-14 (E.D. La. 1984), citing Ewell v. Petro Processors of Louisiana, Inc., 364 So.2d 604, 606 (La.App 1978) and Wallace v, Oceaneering Intern, 727 F.2d 427, 437 (5th Cir. 1984).
[4] Id.

conducted with the greatest prudence and care."[5] When the activity at issue is not ultrahazardous, the principal has no duty to ensure, through instructions or supervision, that the independent contractor performs its obligations in a reasonably safe manner.[6]

In their initial motion in opposition Plaintiff conceded not to pursue a theory of vicarious negligence based on this "ultrahazardous" exception, and therefore this Court will address the second exception raised for the first time in Plaintiff's motion for reargument.

The second exception is based on a determination that the principal was in direct control over the manner in which the independent contractor completed the work. In making the determination of whether a principal retained supervision or control over the contractor, it is the principal's right to exercise control that is of primary concern, not the supervision and control actually exercised.[7] A principal who exercises no operational control has no duty to discover and remedy hazards

---

[5] *Kent v. Gulf States Utilities Co.*, 418 So. 2d 493, 498 (La. 1982). See *Craig v. Montelepre Realty Co.*, 252 La. 502, 211 So.2d 627 (1968) and *D'Albora v. Tulane University*, 274 So.2d 825 (La.App. 4th Cir. 1973), cert. denied, La., 278 So.2d 504 and 505 (pile driving); *Langlois v. Allied Chem. Corp.*, above (escaping gas used in manufacture of petrochemical products); *Gotreaux v. Gary*, 232 La. 373, 94 So.2d 293 (1957) (crop dusting by airplanes); *Fontenot v. Magnolia Petroleum Co.*, 227 La. 866, 80 So.2d 845 (1955) (blasting with explosives).
[6] *Hawkins v. Evans Cooperage Co.*, Inc., 766 F.2d 904, 908 (5th Cir. 1985).
[7] *Crane v. Exxon Corp.*, U.S.A., 613 So.2d 214, 220 (La. Ct. App. 1992)

created by acts of its independent contractors.[8] Similarly contractual obligations to observe prevailing safety rules "does not signify requisite right of operational control necessary to vitiate the independent contractor relationship." [9] Courts have implied that direct liability would result if the principal required strict adherence to safety protocols by its independent contractors and the principal subsequently failed to follow its own requirements.[10]

Plaintiff again points to UCC safety monitoring of contract personnel as evidence of control over Kiewit's contractual obligations. The Court in *Davenport* correctly points out that periodic safety inspections and pointing out violations does not constitute sufficient right to control so as to impose liability on the principal.[11] To hold any principal liable based on monitoring their contractors would lead to the undesirable result of condoning or ignoring unsafe activities.[12]

Plaintiff points to contractual obligations of Kiewit to perform projects as directed by UCC as evidence of the right to control the independent contractor. The right to control is not a question of controlling the work to be performed, but rather

---

[8] *Hawkins*, at 908

[9] *Davenport v. Amax Nickel, Inc.*, 569 So.2d 23, 28 (La.App. 4th Cir. 1990).

[10] *Roach v. Air Liquide America LP*, 2016 WL 3626333.

[11] *Davenport*, 569 So.2d 23, 28 (La.App. 4th Cir. 1990).

[12] See *Davenport,* (Imposing liability based on [pointing out safety violations and correcting them] could lead to the absurd result of encouraging owners to ignore and condone safety violations by independent contractors in order to avoid liability).

the manner in which the independent contractor performs the work assigned.[13] Plaintiff concedes in their motion that UCC employees would instruct Kiewit to have a team to perform various side jobs on site. These side jobs were contractual obligations governed by "Job Instructions" to be provided by UCC. The "Job Instructions" contained in the contract provide description and scope of work to be completed, cost accounting, and other details. Neither the "Job Instructions" nor Mr. Kivell's testimony indicate that UCC retained the right to control the manner in which Mr. Kivell, Kiewit, or its employees were to complete these tasks. The Court finds no evidence that UCC retained the right to control its independent contractors sufficient to hold UCC vicariously liable.

In *Roach*, the Court held that *Smith* was an "improper expansion of Louisiana law," and "there is a distinction between hazards that are inherent in a defendant's premises (for which a premises owner owes a duty) and hazards inherent in an independent contractor's job (for which a premises owner does not owe a duty)."[14]

In *Roach* the Court pointed out that the hazard to the plaintiff in that case, silica, was "not inherent in defendant's premises; the airborne silica which was temporary in nature and transported to the facility by the plaintiff's employer and/or supplier. The hazard was inherent in the performance of the sandblasting."[15]

---

[13] *Roach v. Air Liquide America*, 2016 WL 1453074, at *2.
[14] *Id*.
[15] *Id.*

6

Louisiana case law on asbestos exposure is derived from cases involving asbestos fibers released into the air and subsequently inhaled. There is no case law to suggest that the presence of asbestos is inherently dangerous or harmful. Louisiana Courts have held the opposite to be true finding for the purpose of strict liability that "[The Court] cannot find that [asbestos'] mere presence in the [vicinity of the plaintiff] constituted a defect in the [premesis] for which the [Defendant] could be held liable."[16] Similarly Courts have upheld summary judgment where "There is no evidence to suggest that the construction site was inadequate for the safe handling of asbestos or that the alleged exposure was due to the failure of the premises owner to provide a safe work environment."[17] In *Roach,* the Court reached the conclusion that "it is the employer's duty to ensure plaintiff's safety with respect to the specific hazards created by the performance of his work."[18]

Plaintiff's newly discovered evidence has failed to show that UCC failed to provide a safe working environment for its independent contractors. Mr. Kivell never worked directly for UCC. UCC contracted Kiewit to complete construction and maintenance work at its Taft facility. The dangers posed by the work to be completed by Kiewit and its subcontractors were contemplated in the contract

---

[16] *Palermo v. Port of New Orleans*, 951 So. 2d 425, 438 (La. Ct. App.), writ denied, 957 So. 2d 1289 (La. 2007)
[17] *Jordan v. Thatcher St*., LLC, 167 So. 3d 1114, 1119 (La. Ct. App. 2015)
[18] *Roach v. Air Liquide America*, 2016 WL 1453074 at *4

formation calling for Kiewit to complete its obligations in accordance with prevailing regulations and safety practices in place at the time. The contract submitted as new evidence only serves to strengthen the application of *Roach* to his circumstances. The contract submitted with their motion for reargument speaks to transferring of care, custody, and control from the independent contractor to UCC.[19] This implies that all new construction work to be performed under the contract is necessarily under the sole control and custody of the independent contractor until its acceptance by UCC. This includes all materials to be installed at the facility. That UCC was aware of dangers associated with asbestos is not to imply that they condoned unsafe practices related to it.

The conclusion in *Roach* means that hazards inherent in an independent contractor's job includes all work falling within the scope of the contracted work, not each individual employed by the independent contractor. To hold differently would require premises owners to exert a level of controlling oversight on their independent contractors so as to render all premises owners vicariously liable. Furthermore, holding a premises owner liable for the hazards inherent in the independent contractor's job would negate the independent contractor's duty to ensure their employee's safety with respect to the specific hazards created by the performance of their work. Plaintiff has failed to provide new evidence that UCC's

---

[19] *See* Contract No. 511-776-18 at 10.

premises contained any inherent hazards for which a UCC owed a duty to protect its independent contractors from.

Plaintiff argues that as UCC retained the "right to benefit from the thing controlled", namely the Taft facility, UCC was in custody of any asbestos the plaintiff worked with.

In a factually similar case the Louisiana Supreme Court reviewed custody as it pertained to an independent contractor's employee and asbestos exposure. In *Rando v. Anco Insulations Inc.,* plaintiff worked on the premises of an industrial site under construction. The premises owner specified the use of asbestos, required the contractor to abide by certain engineering standards, and the plaintiff was ultimately harmed by asbestos exposure. However, the Court found that the independent contractor, not the premises owner, was in possession and control.[20]

The Court finds that Plaintiffs argument in favor of a finding of strict liability based on UCC's "right to benefit from the thing controlled" an impermissible extension of Louisiana jurisprudence. To hold that a premises owner meets the "care and custody" requirement for strict liability based on "receiving a benefit from" the premises itself would be to overrule Louisiana precedent "that mere physical

---

[20] *Rando v. Anco Insulations Inc.*, 16 So.3d 1065 (La. 2009).

9

presence on [the] premises does not constitute custody."[21] Plaintiff's new evidence

provides no further support for a finding of strict liability against UCC.

For the forgoing reasons Defendant's Motion for Summary Judgment is

**GRANTED.**


**IT IS SO ORDERED.**

/s/ Calvin L. Scott

The Honorable Calvin L. Scott, Jr.

---

[21] *LeBlanc v. Hullinghorst Indus., Inc.*, 542 So. 2d 642, 645 (La. Ct. App.), writ not considered, 544 So. 2d 412 (La. 1989).